There is only one question before the court today, and that is whether the cause of action is shirting or repelling Curtis Burton of property, or property of the defender's bankruptcy estate, or if it were owned by Mr. Burton. Appellants are asking this court to rule that those claims belong to the bankruptcy estate. If that's the ruling, there is no dispute that those claims have been settled and released as part of a $10 million payment that was made in connection with plan confirmation. I'm going to very briefly highlight a couple pages out of the record that I think are particularly relevant today, and then I'm going to focus on a total of four cases. There are three main Fifth Circuit cases that are relevant here. Educators Group Health Trust, Seven Seas Petroleum, and Lothian Oil. Finally, there is a bankruptcy judge Isger case from 2007 called NRA Dexterity Surgical that I will also touch on that I think is very factually similar to this case. There is no dispute of the law and the standard to be applied here. The question is could the debtor have brought this cause of action as of the petition date? In answering that question, you look at what is the actual nature of the injury that is being alleged, and importantly, what is the relationship between the debtor and the injury in question? When we go through these four cases as they shake out into two groups, the direct claims and the derivative claims, what you're going to see is that where there is a direct claim, the nucleus of facts that we're talking about involves something happening directly between the plaintiff and the defendant that does not involve the debtor or, in some instances, the debtor actually benefited from. The debtor wasn't injured by at all. So looking at the complaint in this case, Curtis Burton was the CEO of the debtor. He had an employment contract that had two termination provisions. On one hand, he could be terminated with cause on 30 days notice without payment. He could also be terminated without cause. That would trigger a termination fee if he was triggered without cause. While it is a disputed fact, it's not really relevant today whether he was disputed with or without cause. We will assume, as alleged in the complaint, that it was without cause. In the complaint, there are two paragraphs. It's 433 and 434 of the record. It's paragraphs 16 and 18, and there's an important distinction I want to highlight for the court between them. Paragraph 16 alleges that the Meridian Party, which is the appellants, directed or coerced the Board of Directors of the debtor to terminate Mr. Burton. So they're alleging a direct action there, right? But in paragraph 18, which is the injury that's actually being addressed, where they're seeking redress, there is no allegation that the Meridian Party, which is where the appellants, directed the debtor to not pay him. Ultimately, the complaint is about him not getting his termination fee under the contract paid by the debtor. It's not really about the termination. It's about the nonpayment of that fee, and in that sense, he is no different than any other contract party that didn't get their claim paid in the bankruptcy case. In all the cases you're going to see where a plaintiff comes in who is also a creditor in the case, and their only complaint is, I didn't get paid by the debtor because you did something and I should have been paid. Those are all derivative claims in these cases. The damage model, the injury that we're talking about, has to be something completely different in the cases that go the other way. Well, doesn't Burton own that claim? No, I think he doesn't. There is a real easy hypothetical to think about of a way that the debtor could have brought this claim instead of Mr. Burton. Let's assume for a moment that the debtor wasn't insolvent or had at least a sufficient liquidity to have paid the claim. Maybe they only had $3 million left in the bank and they used all of those $3 million to pay Mr. Burton's claim. There would be no breach of contract. He would have no complaint. He would have received exactly what he was entitled to. But if there had been tortious interference, if a third party, all the other facts remain the same, some third party comes in, is trying to take away the assets of the company, trying to take over control of the board, and as a result, the debtor had to pay out $3 million, well, then the debtor would have had a tortious interference claim there because the debtor had been injured by having to pay out that amount of money. So, again, we come back to if you just didn't get paid, all you are is a creditor in the case. You're no different than anybody else. I'll begin with Educators Group Health Trust, which is the first in this line of cases. This one is very helpful because it splits the difference. There are one set of allegations and one set of causes of action that are held to be derivative. Before you get into the cases too much, I'm just trying to, because I think you've touched on something that is different about this case, which is in the seven Cs, this whole line of cases you're about to get into, the question is, is it this plaintiff's claim who's filed this suit outside of the bankruptcy, or is it the debtor's claim against the same defendant? But what you really seem to be saying is it is the plaintiff's claim, but it should have been brought in the bankruptcy because it's a claim against the debtor, as you said. So isn't that a different issue than all these other cases address? Yeah, and he actually did file that claim. Right. Yeah, that claim was filed, amended, and eventually withdrawn after this litigation was removed to bankruptcy court. So he originally did try to seek a proof of claim in the bankruptcy case. But why doesn't that show it is his claim? Because he, as you said, he could have, maybe he should have brought it as just a credit or claim in the bankruptcy. Right, because that claim is a breach of contract against the debtor. So every party that doesn't get paid in every contract party has their own claim, which is simply the debtor didn't pay me, whether there's all kinds of theories, non-contractual and contractual theories about I didn't get paid. But that is a claim against the debtor. That's not a claim that would have any liability against Meridian. But it is for the same injury. Exactly, it is the same injury. So he does have an injury, and why can't he then go against a third party, your client, now saying under tortious interference theory, whether it's a good one or not, we're not getting into. But it's the same injury he would have been pursuing in bankruptcy as a creditor, just against a different party. Because ultimately, what you see in these cases, and in this case, every creditor that didn't get paid has the same complaint. It's a very common fact pattern in our bankruptcy cases has happened. You have, whether it's a secured lender or a competitor, someone comes in, sees some assets of a company that it wants to have in a go-forward plan. And it comes in and decides, are we going to keep management? Are we going to keep this equipment lease? Are we going to keep this real property lease? Decisions are made about what will be breached or rejected and what's going to be assumed as part of the— But isn't this the only tortious interference claim? Yes, no other party has filed a tortious interference claim in this case. So doesn't that distinguish it from all the other creditors? Again, no, because both in Lothian and in Dexterity, you'll see that simply looking at the label of the cause of action isn't really enough. What all the analysis is about is going a layer sort of more general than that and saying what is the actual nature of the injury. He could have just as easily said this is a breach of fiduciary duty. You had 20 percent of the company. You came in and bought the secured debt, and you tried to take away the assets for your own benefit. Thereby, you didn't leave enough assets behind to pay my contract claim, just like you didn't pay the janitor, just like you didn't pay anybody else, because there was an alleged conspiracy to take over the assets. And in the record, it is attached to the complaint. There is both an email that he selects a few words out of that makes it seem like there was a conspiracy simply to terminate him. That wouldn't make any sense. There would be no benefit to anyone by just terminating him alone. What's really being alleged, and it's the fact pattern in a lot of these cases, is that there is an overall plan to take the good assets of the company, move them over to a new company, and leave the bad assets, the bad debt behind that doesn't get paid. Well, if you don't get paid in that instance, you're not getting paid for the same reason that everybody else didn't get paid, which is the assets that could have been used to pay you have been taken away. And so that's what the $10 million settlement is for. It's for the fact that assets did, as part of the plan, get transferred over to a new company. And to settle the allegation that there was some improper behavior in connection with that, they made a $10 million payment. So the first case I wanted to touch on was Educators Group Health Trust. The plaintiffs in this case were a number of school districts. The debtor was a health trust, a health insurance company. And the defendants were a management company that administered the trust and also marketed the trust to school districts. And those two different functions are important. There's a set of allegations in this case that there was a negligent management of the company. There were breaches of fiduciary duties. There were fraudulent transfers. All things that I was just talking about, you took assets out of the company. You didn't leave enough behind to pay us. All of those claims are found to be derivative in this case. There are direct claims in Educators Group Health Trust, but they're completely different. Those claims are about the marketing of the company. There is an allegation in that case that the defendants, the marketing company, made false representations to the school districts to get them to participate in this trust about the financial condition of the debtor. So the debtor could never have brought a claim for that. That is what we're talking about, a completely separate injury apart from you didn't get paid. It's that some third party fraudulently induced you into participating in this program. And your damage there is not I didn't get paid. Your damage is I should have never been in this in the first place. That is an injury that is distinct from the first injury to the debtor. The second case is Seven Seas. And here you have unsecured bondholders suing Chesapeake, who were the secured creditors. And this is a case that goes the other way. This is a case that they're found to have direct claims. And the reason that they're direct is, again, the allegation is that Chesapeake made direct misrepresentations to those bondholders, that there was a 10-K that the debtor published. Chesapeake knew that they were false, that the reserve reports in that 10-K were false, and still used those in order to get the bondholders to waive a condition in their contract to allow more secured debt to go in front of them in line. And so if Chesapeake makes a direct misrepresentation to the bondholders in order to get them to either increase the debt, which would have benefited the debtor. The debtor got the money he was looking for in the secured financing of Chesapeake. Or the injury that they're alleging there is if you had told us the truth, we either would have not bought more bonds, which some of the parties did, or we would have sold out of our position. But instead, we relied on Chesapeake's representations to us to not sell because we thought the company was doing great and there wasn't much oil in the ground. So again, it's a different injury to say, as between Chesapeake and the bondholders, something happened that is distinct and separate from I just didn't get paid on my bonds. It seems to me what Chesapeake highlights, what Judge King's opinion articulates, is that the injury to the plaintiff whose action is separate and is allowed to bring a direct separate action is a different injury that's not dependent on an injury to the debtor. And it seems to me most examples that you have given us, you've had a general lowering of the liquidity of the company. And what this plaintiff is arguing is irrespective of whether it's a good thing or a bad thing to fire me, irrespective of whether the assets through the actions of replacement management increased or decreased by this discharge, I have an injury caused by the tortious action of Meridian. What's your response? Isn't this a different injury not dependent on any injury to the debtor, to the bankrupt, and therefore is not subject to the rules you're talking about? No, I think it is the same. You needed to say no. You needed to say no. It's your analysis that concerns me. It is the same injury. Did you go back to my hypothetical? No, not right. But I will go back to your hypothetical. If we go back to the hypothetical, if the debtor had paid this, he wouldn't have been injured. So the only question is – You're trying to capture it just within the failure to make the payment. I'm not sure that's the right way to look at this. You're looking upon it as a debt, which you need to, just another debt not paid by the bankrupt. He is saying a tortious interference has displaced me as the head of this particular company and continuing to run it and all the aspects of that. We need to go back to the complaint to see what all his relief is. What relief is he seeking in the complaint? That's exactly right, Your Honor. It's very specific. His only complaint is not I would have worked for this company for another 10 or 20 years. I would have made this much money. His only complaint is the contract was breached because I didn't get my termination fee. It goes back to the contract damages. The only reason that that breach happens is the debtor doesn't have the liquidity to pay it. And the only way you can get there in his complaint is if there is, again, some larger set of facts, some conspiracy that included removing management in order to move the assets to the new company. But it's not – you need to make this the debtor's injury, and it seems to me to make it something that's only subject to being filed in bankruptcy and just another claim that wasn't paid. But is that the way the complaint characterizes it? You're saying the remedy section may do that. Yes. I mean I think that the factual allegations allege an overall conspiracy. The email that is in the record is attached and incorporated as part of the complaint that sort of they used to allege that it lays out this plan to take over the assets of the company. That's what is being alleged in the complaint. Were you at least – well, I shouldn't put it that way. What is your position on whether the injury to this plaintiff depends at all on any injury to the bankrupt? It absolutely does. Why? Because, again, if the debtor had simply had the liquidity to pay this, he would have paid it. There would be no breach of contract. Terminating him wasn't a breach of contract. They had the contractual right to terminate him if they paid him, and they didn't have the money to pay him. The only way you get to they didn't have the money to pay him is that the assets were gone. Well, but Meridian did not have the common law right to interfere with this contract, if they did, and created a tort thereby if they did interfere with it, which is another way to view why this particular claim is not in the category that you're talking about. It's Meridian's actions to interfere with this contract, and it's their liability that we're dealing with, and it's not dependent upon an injury to the bankrupt. Your argument to the contrary will have to be weighed. I think there is – we would characterize the contract and the issue differently. I think there is the way that the appellee's brief describes it as it's his employment contract. The debtor is a party to that contract, too. The debtor had benefits and rights under that contract. It's not as if this contract existed only for Mr. Burton's benefit. The debtor had the benefit of his services under this contract, and they had the harm when he got terminated if they couldn't pay him. That increased debt was a harm. It had $3 million of liability that it didn't otherwise have. Thank you, counsel. We'll hear from you again. May it please the court. Your Honor, my name is Richard Schechter. It's my privilege to represent Curtis Burton, and I'm going to hire you, Judge Southwood, to come down and argue my case because I don't really have a lot to repeat beyond what you said. I think you've all zeroed in on the key point of this case. Well, you have to deal with his answers to those points as well. I'm not sure that he ever answered. Let me ask you about Marvin Isker's opinion in dexterity. Isker really does come close to putting any kind of failure to comply with contractual obligations as within the same general category of something that needs to be brought in bankruptcy. And he's looking for special factors. He may not use the word factors, but something to differentiate this claim as opposed to there. There was a contract with dexterity that was breached by these. I mean, I don't know how far they had gotten in the case, whether these were facts that were found or not. At least they alleged malfeasance by some majority shareholders and this other company, Teleflex. So he's saying all of that claim is operated to cause SVI and their contract to be breached. And so the money did not go to SVI. It went to these other malfactors. I don't know if they were. So why is that different here? The money didn't go necessarily elsewhere, but there was a contractual relationship, breach or not. It's just depending on why he was terminated, it's a different obligation to him perhaps. Give me the special reasons why this is different. I mean, maybe Marvin was wrong. But are you going to distinguish dexterity or say it's wrong or where are you going to go with that? I'm going to distinguish dexterity for the following reason, Your Honor. Starting back with the Educators Trust case and even before then and in seventh season, which you sat on the panel, Your Honor, the key thing has been to focus on the pleadings. What's pled? What's said in the pleading? We don't look at who's going to win, lose or draw. We don't look at what the damage model is, how much you're going to win or lose. We don't even look, as you said in seven seas, at whether there is a duty owed. All we look at is whether there's an allegation that creates a unique and independent cause of action that is different from the damage suffered by everybody else. In dexterity, if you will turn to page 701 of the opinion, the third paragraph down, you will find that the court asked the following question. What is the pleading underlying the plaintiff's claim for breach of contract? Tortious interference with contract. Was it a specific allegation about harm directly to them or was it a generalized allegation? In the third paragraph down, the court notes plaintiffs do not specify what particular breaches of fiduciary duty or wrongful acts precipitated the alleged contract breaches. Rather, they incorporate their allegations as averred in supporting counts one through four in the second amended complaint. Counts, Your Honor, in allegations that went to broad general damages suffered by the debtor, not specific unique harm. These breaches of fiduciary duties related to the alleged bogus distribution agreement, plaintiffs fail to demonstrate how these allegations also support their specific claim against defendants for tortious interference. In our case, all we've alleged is the tortious interference facts. We've not alleged that they ran the business down. We've not alleged that they looted the business and took the assets and moved them over somewhere else, even though that's what they did, but that's not alleged in our case. Our allegations are specific and particular, and that distinguishes us from the allegations in Dexterity and every other case, including Lothian, that they've cited. We talked about seven C's. How would you fit this within? I believe this fits exactly into seven C's. And you asked, is it Weiner or is it Judge Weiner? I'm not sure. Judge Weiner. Judge Weiner. Judge Weiner asked a question right at the beginning of oral argument, which was, isn't this injury unique to him? And that is the whole point of seven C's. You asked whether there was anybody else who had a tortious interference with contract claim and how the damages that he suffered in the tortious interference with contract claim affect the rest of the creditors. They have no effect. They're not assets to which the creditors are entitled. They were unique damages suffered by Mr. Burton. Why is his damage, Mr. Burton's damage, not just not getting whatever the payment is for improper without cause dismissal, whatever that amount is? Do you disagree with the characterization by your friend on the other side that that is all that he would be owed? I do disagree. In addition, he could be owed. If, for example, someone were to find that he was fired without cause but there was no money, there may have been other damages that he suffered in the interim. What do you mean by there was no money? I'm not following your hypothetical. The gist of what I understand the defendant's argument is, okay, we interfered and had him fired without cause. But the debtor was bankrupt and didn't have the money to pay him. But do you agree that if he were fired without cause, there's a contractual provision for that in your client's contract with the debtor and that that would have been a set fixed amount to be paid? That would have been one element of the damages, absolutely, Judge, but he may have been able to claim other damages. Is that in the complaint? We have a general complaint for damages. An ad demnum clause that's not specific, huh? It's not specific, but, you know, all that's grist for the state court district judge where this case belongs and if there's a special exception and they want a special exception that details it, that's where it belongs. This case falls in that category of cases where courts are determining whether what the jurisdiction is over a case. Justice Scalia wrote a concurring opinion in an admiralty case called Sison v. Ruby where the court was trying to define the dimensions of admiralty jurisdiction and he said the most important thing in cases is to have a clear, bright-line test so that a court knows where to, which case for jurisdiction, which cases are within the court's power and which cases are a nullity. This case is clearly within the power of the state district court. That's where it belongs. All of defendant's arguments are grist for the litigation mill in state district court. The issue here is who owns the cause of action? That's a simple issue. Is it a — What seems different about this case than the others? The others, the issue is can the debtor or all the other creditors have the claim or this plaintiff? Here, as I think the other side pointed out, it seems to me the argument isn't so much that the debtor, I mean, I think they do try to argue that, that the debtor could have sued Meridian for this, but it's really that this is no different along the lines of what Judge Isker said than a claim that should have been brought in the bankruptcy against the debtor. It's not that it's the debtor's claim. It's that it's really a claim against the debtor for that termination payment. How do you deal with that difference? To my understanding — You need to speak in the — it's not going to record it if you're not — To my understanding, the bankruptcy law is not a get-out-of-jail-free card for everybody who commits a tort against someone else. Just because the debtor gets out of jail free, that doesn't make the rest of the third-party tort users immune from responsibility. But so you agree that, say, this Meridian had also breached, induced a breach of a contract with an oil field services operator, they'd also have a claim against Meridian, all outside of bankruptcy. Right. If Meridian induced specific — engaged in cautious interference with specific contracts, individuals whose contracts were cautiously interfered with could bring a claim. Now, that doesn't mean if Meridian gets in there, runs the business down so it can loot the company, loot the assets somewhere else, and everybody has that claim, hey, we're left with nothing because of their breach of fiduciary duty and misconduct. That's a generalized claim amongst all of the debtors. In this specific case, you have a breach of a particular contract, and that is all we're seeking relief from. Well, you seem to be saying that — I may be — you may have a follow-up. I'm sorry. You seem to be saying that dexterity is a matter strictly of pleading, looking through the opinion. And as you said that, I don't see where ISCR really — maybe I didn't meet the whole opinion again — set all this out. But you seem to be making the point that unlike here, where you're saying that there are certain actors who worked against certain individuals to cause this decision-making to occur and causing your client to be fired and replaced by other corporate officials, there was not that kind of specific allegation in dexterity. But had there been, that too would have been allowed to continue. Is that your view of what dexterity means? My view is because Judge Isker specifically looked at the pleadings provision and said they haven't alleged anything but a general set of damages, but general you breached your fiduciary duty to everyone allegations that there's no claim available. But in our case, where there's a particularized claim, and we believe it's failed. But even if I'm wrong, Judge, Judge Isker's wrong on this. It's contrary. You're either right on how to read it or Isker was wrong in writing it the other way. Exactly right, Your Honor. Well, you're not alone. They feel the same way over there from a different viewpoint. Well, let me ask you maybe in a different way. My concern with this case, it cuts both ways. I do think your colleague on the other side, who's helping us understand this case as well from a different perspective, is right that there's a certain garden variety nature with all due respect to what you're saying to us, is that I need a freestanding right to continue, even though I'm in a big mass of people who wasn't paid at all or was given pennies on the dollar. And, of course, your client wasn't paid at all because of his claim. And I don't want us to create in this, from my personal view, I don't want to create in this case sort of not a get out of jail court. I can't do it quickly enough to say what the opposite would be, but a large increase in the number of people who will have independent claims and destroy the whole purpose of bankruptcy, which is to bring all these debts in together and resolve them. Of course, Meridian wasn't bankrupt, which is why you're suing them. And they weren't brought into bankruptcy. But if it's strictly a matter of how you allege it in the complaint, it seems to me there's an awful lot of imaginative lawyering that at least will allow claims to be brought separately in state court or if it's a federal claim in federal court, independent bankruptcy. It still has to be proven. And that may be the biggest problem, sort of a corrector to my concern. But why do you – I mean, 7Cs uses language along the lines of what you're talking about. And Judge King actually wrote about the injury being separate, an injury that's not dependent upon injury to the bankrupt. How important is that here, that the nature of your injury – you're talking about the complaint and how it's written and alleging different actions or specific actions by the debtor or by Meridian involving the debtor. How important is the separate injury, and how does that fit into the analysis? I think a separate injury is very important, Your Honor. And again, it goes back to the original question. He had a unique injury that no one else had, and no one else can claim a part of his damages for having his contract tortiously interfered with. Would anybody else's contract who was breached by not fulfilling it have a unique injury? Only my – I'm the only one injured by the failure to honor this supply contract or this employment contract? If there is a specific set of actions that constitute tortious interference where you breach the law engaging in the actions, then we believe that's a unique injury and a separate injury. Well, isn't this claim against the person who made the allegations against your client not the corporation? Absolutely not. It absolutely is. Then what do you mean? It's against Meridian, correct? Correct. And it's not against the debtor corporation? It's not against the debtor. It's against the party. That's how I interpreted your question, Judge. It is against the third party, not the debtor. And that distinguishes it from the rank and file who lost their jobs because the company went bankrupt. Absolutely not. That is the absolute distinction. And it's interesting in 7Cs, Judge, in footnote 7, there is further— You keep sending us to the—what page is that? I'll find it. I'll find it. It is page 587. In footnote 7, and really even going deeper into particularizing how a separate injury can occur, the panel on which you sat, Judge King, noted that not only was the injury separate because the conduct was described in the body of the opinion, but there were different types of unsecured creditors. There were unsecured creditors who had this written agreement with the debtor. And then there were unsecured creditors like employees or vendors who had no such agreement. And that distinguished it. And those unsecured creditors with a written agreement that the debtor would not issue secured notes above a certain amount had a separate and unique injury. So I believe, Judge, that we're right in line with 7Cs, and we're right in line with footnote 7 of 7Cs, and we are right in line with the only case in the United States I've been able to find that addresses this exact issue, which is Riley v. Snekva out of the district court in Ohio, the Western District Court. And in that case, the court dealt specifically with this exact issue and found that there was, in fact, a unique and separate injury, just as you have pointed out. That injury separated the plaintiff, who was a president of a company, from everybody else and allowed him to proceed forward with a cause of action for tortious interference with his contract. And there was a claim in one of the briefs that was filed by the appellant that that's not what Riley said. But, in fact, if you look at pages 800 and 801, starting at headnotes 7 and 8 and working through, I guess, 802 before headnote 9, you will find that is exactly what is discussed. So the only court, this is not a frequent cause of action, tortious interference with an employment contract. Well, there certainly has been case law, and I think that just reading about financial matters, of some white knight who's maybe not completely clean coming in to try to save some corporation who's in distress and making demands, it seems to me this could be a fairly common kind of claim that this new, whoever had the new money that was coming into the corporation made demands. And those demands will affect the obligations of the company that may ultimately end up in bankruptcy regardless. So with all due respect, it seems to me it could become a common claim depending on what is done in this case. Well, Your Honor, since Educators Trust 1994, and I haven't looked at the other cases from the Fifth Circuit before that, I found one case in the history of American jurisprudence that's dealt with this exact issue, which is tortious interference with an employment contract. That's Riley v. Stekma. There's no other case that's been cited by the defense, by the appellants in their brief. And I just don't see it becoming a big issue. But I've been wrong before. Well, regardless of what makes a big issue or not, we need to get the case right based on bankruptcy law and ships fall where they may. Got anything else for us? No, Your Honor. I'm here to answer any of the questions you all have. Thank you, sir. Thank you very much. Thank you. I want to touch on this Riley case and the idea that this is the only case that's ever talked about this. The cases from the Fifth Circuit are tortious interference cases. Lothian is a tortious interference case. Dexterity is a tortious interference case. There's another case we cite from Judge Isger, also from 2007, called Andrews. They're also tortious interference cases. That's three cases inside of this circuit, including one from the Fifth Circuit, where a tortious interference claim is held to be derivative. So you have to go 20 years ago to the Sunders of Ohio to find a court ruling the other way. And the reason that court goes the other way is that, again, there is a direct representation in that case. The defendant was alleged to have said to the plaintiff, you need to stay on as the president. Don't go take another job. We're going to back this company. We're going to do the opposite of what Meridian is alleged to have done. We're not going to take away the assets. We're going to stick by you. And his allegation is that he was harmed by that. So that's a lost opportunity cause. That's why it's a direct claim. Just like in Seven Seas, the bondholders could have sold out of their position. That was a lost opportunity cause. That damage is different than saying I just didn't get paid my contract. On the question of what does the complaint say, it's in the record. Your Honors can read it. I did want to highlight, you know, if you look at the damages provision, it's page 436, paragraph 27. It says, quote, Burton will show he has suffered substantial actual damages, specifically the loss of monies to which he is entitled under section B of the agreement. Burton brings this suit to recover the monies he's entitled under section B of the agreement, together with any applicable prejudgment and postjudgment interest and costs. It's just a breach of contract claim. But he's not suing the employer. Correct. He's suing the person who he claims dissed him. Correct. And that's what happens in Lothian, and that's what happens in dexterity. The court in each of those cases looks past the label that's put on that complaint. It says what's really going on here. If you look at dexterity, Judge Isker says this is just a clever restatement of a breach of fiduciary duty claim. If we were here on a breach of fiduciary duty claim, we wouldn't be having all this headache about it. It would be very clear that it was a claim owned by the debtor. That's always brought by the Unstricted Creditors Committee. Well, I mean if you want to support what Judge Isker said, it was certainly excellent. I trust him going in on any of his opinions. He does say, quote it already here, plaintiffs do not. Do you want the page number? No. Plaintiffs do not specify what particular breaches of fiduciary duty or wrongful acts precipitated the alleged contract breach, and that's not the situation here where that has been more specified. Is that loose language or is it not? What would you say about him focusing on this that it wasn't specific enough in dexterity? Well, at the end of that, despite saying that, he still concludes a couple paragraphs later that what's really being alleged, if you look past the label, and you look at the nature of the injury and the debtor's relation to that injury, he finds it's still a breach of fiduciary duty claim despite it not being specifically claimed. All right, counsel. Thank you both for helping us understand this case. I call the last case of this day.